UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DUSTIN LEE COMBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:22-cv-786 PLC |
| | ) |
| ALEX DOWNING, | ) |
| | ) |
| and | ) |
| | ) |
| DUSTIN BREAKFIELD, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Alex Downing's and Dustin Breakfield's motion for summary judgment on Plaintiff Dustin Lee Comb's[1] amended complaint filed pursuant to 42 U.S.C. §1983 alleging Defendants violated her Eighth Amendment rights through the use of excessive force. [ECF Nos. 13, 34] Defendants argue that the amount of force they used was reasonable and, even if a constitutional violation did occur, they are entitled to qualified immunity. [ECF Nos. 34 & 35] Plaintiff did not file a response in opposition to Defendants' motion and the time to do so has expired.

**I.   Background[2]**

On February 27, 2022, Plaintiff was incarcerated at the Potosi Correctional Center and

---

[1] In the amended complaint, Plaintiff identifies herself as a transgender female and refers to herself using feminine pronouns. Therefore, the Court will refer to Plaintiff using feminine pronouns.

[2] The factual background is based upon Defendants' statement of uncontroverted material facts and the supporting affidavits and evidence. As discussed later in this memorandum, Defendants' material facts are deemed admitted due to Plaintiff's failure to respond to Defendants' motion and their assertions of facts.

1

Defendants were employed as correctional officers ("CO") at the facility.  [ECF No. 36, ¶¶ 2-4] On that date, Plaintiff declared protective custody needs from her cellmate and CO Breakfield began escorting Plaintiff, whose hands were cuffed behind her back, to the segregation unit. [*Id.* at ¶¶ 5-7; 36-2, ¶ 3; Ex. A (video)]  During transport, Plaintiff stopped walking and "pulled away" from CO Breakfield. [ECF No. 36, ¶¶ 6- 7; 36-2, ¶ 3; Ex. A (video)] Plaintiff continued to struggle and pull away as CO Breakfield forced Plaintiff onto the ground. [Ex. A. (video)] Although CO Breakfield instructed Plaintiff to stop resisting, she fought CO Breakfield's efforts to regain control of her by rolling around, flipping her body over, and repeatedly kicking CO Breakfield. [ECF No. 36, ¶¶ 6, 7; Ex. A (video)] CO Breakfield punched Plaintiff four or five times over the course of approximately 20 seconds while attempting to subdue Plaintiff. [Ex. A, (video)] CO Breakfield first strikes Plaintiff approximately 15 seconds into the altercation and does not strike Plaintiff after she stops moving and kicking as CO Breakfield holds Plaintiff down. [Ex. A, (video)] Approximately 45 seconds after the incident began, other officers arrived and assisted in maintaining control over Plaintiff and bringing her to a standing position. [ECF No. 36, ¶¶11, 9, 12, 13] CO Breakfield did not make any statements about Plaintiff's sexuality or status as a transgender person. [*Id.* at ¶ 10]

Several officers, including CO Downing, then escorted Plaintiff to the housing unit. [*Id.* at ¶ 14] While walking into the unit, Plaintiff placed her foot behind CO Downing's foot and pulled away from the officers. [*Id.* at ¶ 14] They fell to the floor while Plaintiff thrashed and kicked.  [*Id.* at ¶ 14, Ex. C (video)] Over the course of approximately 50 seconds, six officers worked to restrain Plaintiff, shackle her ankles, and return her to a standing position. [Ex. C (video)]

The officers moved Plaintiff to a restraint bench where Plaintiff "lurche[d] forward" while the officers were attempting to secure her handcuffs to the bench. [ECF No. 36, ¶ 15-16] Officers

2

attempted to gain control of Plaintiff by "tak[ing her] to the floor" and then lifted her back onto the bench. [*Id.* at ¶ 17] Plaintiff attempted to spit on CO Downing and he deployed mace before eventually placing a spit hood on Plaintiff. [*Id.* at ¶ 17, No. 36-5, ¶ 8] After this, officers escorted a complaint Plaintiff to a cell. [ECF No. 36-5, ¶ 10] During his interaction with Plaintiff, CO Downing did not grab Plaintiff by the hair or pull her from the restraint bench. [ECF No. 36, ¶ 18; Ex. E]

On December 12, 2022, Plaintiff filed her amended Section 1983 complaint asserting CO Breakfield and CO Downing[3] violated her Eighth Amendment right to be free from cruel and unusual punishment through the use of excessive force. [ECF No. 13] In support of her claims, Plaintiff alleges that she slipped in a puddle and fell while CO Breakfield was escorting her to the segregation unit. [*Id.*] Plaintiff asserts CO Breakfield responded by repeatedly punching Plaintiff in the back of the head for three to four minutes while stating "you're a man, not a woman you freak" and by "cutting off her ability to breath[e]" by placing his knee on the back of Plaintiff's neck. [*Id.*]

Plaintiff further alleges that she was "compliantly" escorted to the segregation unit where her ankles were shackled to the restraint bench. [*Id.*] Plaintiff states that CO Downing then "violently grabbed [her] by the hair, jerked her off the bench…, slammed her to the floor and bashed her face off of the floor twice." [*Id.*] Plaintiff asserts CO Downing then "emptied a can of OC spray into [her] face" before placing a spit mask on Plaintiff.[4] [*Id.*] Plaintiff claims Defendants violated her Eighth Amendment right to be free from cruel and unusual punishment and that, as a

---

[3] Plaintiff claims against Defendants are in their individual capacities. [ECF Nos. 13 & 16] Plaintiff's official capacity claims against Defendants were previously dismissed. [ECF No. 16]

[4] Plaintiff's amended complaint also alleges that her "clothing was ripped from her body" and her "face was slammed into a wall" before she was moved to an observation cell. [ECF No. 13] Plaintiff does not clearly specify in her amended complaint who allegedly committed these acts. [ECF No. 13]

3

result of the excessive force, she incurred "injuries of lacerations, bruising, permanent scarification, nerve damage, PTSD, anxiety and mental anguish." [*Id.*]

## II.     Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotation marks omitted). The non-moving party may not rest upon "mere allegations or denials" in the pleadings but instead must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)). The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Because Plaintiff did not respond to the motion for summary judgment, Defendants'

material facts are deemed admitted. *See* United States District Court, Eastern District of Missouri, Local Rule 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"); *Tramp v. Associated Underwriters, Inc.*, 786 F.3d 793, 799 (8th Cir. 2014). When a party "fails to properly address another party's assertion of fact, as required by Fed. R. Civ. P. 56(c), the court may … (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3). Where, as here, a summary judgment motion is unopposed, the Court considers the merits of the motion and reviews the submitted evidentiary materials to determine whether the movant has established the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. *Saffell v. Wilson*, No. 4:19-CV-00202 JAR, 2020 WL 7695417 *2 (E.D. Mo. Dec. 28, 2020).

### III.  Discussion

Defendants contend they are entitled to summary judgment because there is no genuine issue of material fact and the force used was necessary to counteract Plaintiff's resistance. [ECF No. 35] Specifically, they argue that Plaintiff began an altercation with CO Breakfield during transport and that Breakfield "used the force necessary per his training to regain control of Plaintiff[.]" [*Id.*] Defendants also argue that Plaintiff continued to resist by tripping CO Downing, resisting restraint to the restraint bench, and attempting to spit on the officers, thus requiring the use of pepper spray and the placement of a spit hood. [*Id.*]

The Eighth Amendment prohibition against cruel and unusual punishment bars correctional officers from using force that imposes "unnecessary and wanton infliction of pain[.]" *Peterson v. Heinen*, 89 F.4th 628, 635 (8th Cir. 2023) (quoting *Whitney v. Albers*, 475 U.S. 312, 319 (1986)).

5

"The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* (quoting *Whitney*, 475 U.S. at 319).

Officers may apply force "in a good-faith effort to maintain or restore discipline" but may not apply force "maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether a prison official used excessive force, the Court considers "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). Whether the use of force was necessary to maintain or restore discipline is a fact specific issue that "turns on the circumstances of the individual case or the particular prison setting." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (internal quotation marks and quoted cases omitted).

A. <u>Transport by CO Breakfield</u>

CO Breakfield contends he is entitled to summary judgment because the undisputed evidence demonstrates that he used the force necessary to regain control of Plaintiff after she instigated an altercation and resisted CO Breakfield attempts to subdue Plaintiff. [ECF No. 35] Plaintiff alleges that CO Breakfield used excessive force while transporting her to the segregation unit. Specifically, Plaintiff alleges that CO Breakfield "attack[ed]" her after she slipped in a puddle by repeatedly punching her in the back of the head for three to four minutes while making derogatory comments. [ECF No. 13] Plaintiff further asserts that CO Breakfield "placed his knee on the back of Plaintiff's … neck cutting off her ability to breath" after the other officers arrived to restrain her.

6

The undisputed evidence establishes that Plaintiff initiated the physical encounter during transport by pulling away from CO Breakfield and refusing to comply with CO Breakfield's commands to stop resisting. Plaintiff then escalated the confrontation by thrashing around and kicking at CO Breakfield, who was alone with Plaintiff, while CO Breakfield struggled to regain control of Plaintiff. While CO Breakfield struck Plaintiff several times midway through the encounter, it was only after and while Plaintiff continued to aggressively resist CO Breakfield's considerable efforts to subdue Plaintiff. Here, Plaintiff's refusal to adhere to CO Breakfield's commands and her violent physical response posed a risk to the officer's safety. *See Peterson*, 89 F.4th at 636 (correctional officers did not use excessive force in holding a prisoner down for around 20 seconds and using force to secure and restrain the prisoner to a chair when prisoner resisted and threatened to kill the officers); *See also, Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) ("[S]ummary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy.")

Accordingly, Plaintiff failed to demonstrate that CO Breakfield applied force "maliciously and sadistically to cause harm" as opposed to in good faith to restore discipline. Because Plaintiff failed to raise issues of genuine fact regarding whether CO Breakfield violated her rights under the Eighth Amendment, CO Breakfield is entitled to summary judgment.

B.  Restraint by CO Downing

CO Downing contends that Plaintiff failed to raise issues of genuine fact regarding his conduct. [ECF No. 35] CO Downing further contends that his use of pepper spray and placement of a spit hood was a "good faith effort to maintain or restore discipline" and was not done of "any sadistic purpose." [ECF No. 35]

In Plaintiff's complaint, she alleges that CO Downing: (1) "violently grabbed [her] by the

7

hair, jerked her off the bench…, slammed her to the floor and bashed her face off of the floor twice[,]" and (2) "emptied a can of OC spray into [her] face" before placing "a spit mask on Plaintiff's face[.]" [ECF No. 13] However, Plaintiff's asserted factual allegations are not supported by evidence in the record. Instead, the undisputed evidence is that Plaintiff continued to resist the officers as they escorted her into the segregation unit, first at the entrance to the unit and later while the correctional officers attempted to fasten her to the restraint bench. Shortly after entering the building, Plaintiff tripped CO Downing, causing both of them to fall to the floor. Once down, Plaintiff thrashed and kicked while six officers attempted to restrain her and shackled her ankles. After bringing her further inside the unit, Plaintiff lunged at some of the officers while other officers attempted to secure her handcuffs to the bench. The officers responded by forcing Plaintiff to the floor before regaining control of Plaintiff and placing her back onto the restraint bench. Plaintiff then attempted to spit on CO Downing. CO Downing responded by deploying mace before eventually placing a spit hood on Plaintiff. After the spit hood was in place, Plaintiff compliantly allowed correctional officers to escort her to a cell.  At no time did CO Downing grab Plaintiff by the hair or pull her from the restraint bench.

      Here, CO Downing use of force, including deployment of chemical spray, was not excessive. CO Downing's actions were in direct response to Plaintiff's persistent resistance, over the course of several minutes. Plaintiff's violent resistance to the officers and spitting warranted CO Downing's use of force, including the use of chemical spray, to restore discipline. *See Peterson*, 89 F.4th at 636 (limited application of chemical spray to control a recalcitrant inmate was not excessive force when inmate was cursing, threatening correctional officers, and spitting at officers). Based on the undisputed evidence, viewed in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate that CO Downing use of force was excessive or applied

"maliciously and sadistically to cause harm[.]" The Court therefore grants Defendant Downing's motion for summary judgment. In light of the Court's finding that Defendants did not use excessive force in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, the Court does not address Defendants' argument that they are entitled to qualified immunity.[5]

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment on Plaintiff's claims is granted.

**IT IS HEREBY ORDERED** that the Defendants' motion for summary judgment [ECF No. 34] is **GRANTED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2024

---

[5] Consideration of a claim of qualified immunity is a two-prong inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Lombardo v. City of St. Louis*, 38 F.4th 684, 689–90 (8th Cir. 2022) (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013)). Because an official is entitled to qualified immunity unless both prongs are satisfied, a court's analysis ends if either prong is not met. *Stewart v. Precythe*, 91 F.4th 944, 952 (8th Cir. 2024) (holding the court does have to consider the second prong of the analysis if it finds there was no constitutional violation).